THOMAS E. MOSS
UNITED STATES ATTORNEY
WENDY J. OLSON
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA, PLAZA IV
800 PARK BOULEVARD, SUITE 600
BOISE, ID 83712-9903
TELEPHONE: (208) 334-1211

U.S. COURTS

2005 JUL 28 PM 3: 54

REC'D_____FILED_____
CAMERON S. BURKE,
CLERK        IDAHO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) CR No. CR 05-0175-C-LMB |
| vs. | ) |
| | ) RULE 11 PLEA AGREEMENT |
| ALLISON CREEK SHEEP CO., | ) |
| Defendant. | ) |
| | ) |

# TABLE OF CONTENTS

I.      GUILTY PLEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        A.      Summary of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        B.      Acceptance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     WAIVER OF CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    NATURE OF THE CHARGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        A.      Elements of the Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.      Factual Basis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     SENTENCING FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        A.      Maximum [and Minimum] Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        B.      Fines and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        C.      Special Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      UNITED STATES SENTENCING GUIDELINES . . . . . . . . . . . . . . . . . . . . . . . 5
        A.      Application of Sentencing Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . 5
        B.      Chapter Eight Applies to Sentencing of Organizations . . . . . . . . . . . . 6

VI.     WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS . . . . . . . . . . . . . . . . . . 6

VII.    PROVIDING INFORMATION FOR THE PRESENTENCE REPORT . . . . . . . . . . . . 7

VIII.   NO RIGHT TO WITHDRAW PLEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IX.     CONSEQUENCES OF VIOLATING AGREEMENT . . . . . . . . . . . . . . . . . . . . . . 7
        A.      Government's Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        B.      Defendant's Waiver of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

X.      MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        A.      No Other Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

XI.     UNITED STATES' APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

XII.    ACCEPTANCE BY DEFENDANT AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . 9

## I.     GUILTY PLEA

**A.     Summary of Terms.** Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will waive indictment and plead guilty to Count One of the Information. The defendant acknowledges that the plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement. More specifically, the parties agree as follows:

Count One charges the defendant with harboring aliens for commercial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii) and (B)(i), and aiding and abetting such an offense, in violation of Title 18, United States Code, Section 2.

**B.     Acceptance.** Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government agrees under Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure that it will not bring any additional criminal charges against this defendant based on conduct or allegations presently known to the Government including conduct related to the employment of Peruvian sheepherders and the conduct described herein; nor will the Government seek the criminal or civil forfeiture of any of the property related to these matters.

## II.    WAIVER OF CONSTITUTIONAL RIGHTS

Defendant understands that defendant will be placed under oath at the plea hearing and that the government, in a prosecution for perjury or false statement, has the right to use against the defendant any statement that the defendant gives under oath. Moreover, the defendant understands and waives (gives up) the following rights: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury; and 3) the rights, at trial, to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify, to present evidence and to compel the attendance of witnesses. The defendant understands that by pleading guilty the defendant waives (gives up) all of the rights set forth above. The defendant fully understands that by entering a plea of guilty, if that plea is accepted

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

by the District Court, there will be no trial and defendant will have waived (given up) these trial rights.

## III.    NATURE OF THE CHARGES

   A.    **Elements of the Crime.**  The elements of the crime of harboring for commercial gain, as charged in Count One, are as follows:

   1. Person or persons named in indictment were aliens;

   2. The alien(s) were not lawfully in the United States;

   3. The defendant knew or was in reckless disregard of the fact that alien was not lawfully in the United States;

   4. The defendant harbored, or attempted to harbor, the alien from detection by immigration authorities; and

   5. The defendant harbored the alien for the purpose of commercial or financial gain.

   The elements of aiding and abetting are as follows:

   1. The crime of harboring for commercial gain was committed by someone;

   2. The defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit the crime;

   3. The defendant acted before the crime was completed.

   B.    **Factual Basis.**  If this matter were to proceed to trial, the United States would introduce the following evidence to prove the above elements beyond a reasonable doubt:

   From between at least 1990 through to the present Mick Carlson and Gail Carlson owned and operated Carlson Livestock, a sheep ranching business in Idaho County, Idaho. In at least the early 1990s, Carlson Livestock hired sheep herders through the United States Department of Labor's H2A program. Through the H2A program, foreign workers can obtain temporary status in the United States for a specified period of time. In the State of Idaho, the Idaho Department of Labor acted as agent for the United States Department of Labor, Employment and Training Administration, in various aspects of the H2A certification process, including by inspecting and approving housing arrangements for H2A workers.

- 2 -

In 1991, the United States Department of Labor conducted two separate investigations into whether Carlson Livestock had violated various federal regulations regarding payment of wages to sheep herders employed by Carlson Livestock. The investigations determined that Carlson Livestock owed approximately $46,000 in nonpayment of wages, much of which was owed to sheep herders who had entered the United States through the H2A program. In approximately 1991, prior to resolution of the issues the United States Department of Labor was investigating, Carlson Livestock filed for bankruptcy. Following the bankruptcy, the U.S. Department of Labor did not pursue back wages on behalf of the sheep herders. In 1992, the Idaho Department of Labor informed defendant Mick Carlson that the services of the Idaho Department of Labor were being discontinued to him.

In approximately 1995, Guy M. Carlson II ("Guy Carlson"), the son of Mick and Gail Carlson, formed Allison Creek Sheep Company as his sole proprietorship. On July 25, 1995, the United States Department of Labor, Employment and Training Administration, sent to Allison Creek Sheep Company a letter certifying it for one sheep herder. The certification letter reminded defendant Guy Carlson, that Allison Creek Sheep Company must remain separate of other Carlson family businesses and that foreign workers, if hired, were limited to employment with him alone.

On July 15, 1999, an Application for Alien Employment Certification was signed by Guy Carlson, and received at the United States Department of Labor, Employment and Training Administration on July 23, 1999. The application listed Allison Creek Sheep Company and Guy Carlson as the employer. On July 28, 1999, the United States Department of Labor, Employment and Training Administration, notified Guy Carlson that his application on behalf of Allison Creek Sheep Company had been accepted for consideration, that the applicable dates were September 15, 1999, through September 14, 2000, and that his request for conditional entry into the interstate clearance system was based on his written assurance that his housing would meet Department of Labor standards and encouraging him to contact his local Job Service to make arrangements for a housing inspection. On October 20, 1999, Guy Carlson signed a housing inspection/approval form for the H2A program affirming that his father would not be involved in any aspect of the sheep operation and would have no contact with the workers. The housing was approved shortly thereafter.

- 3 -

On or about October 18, 1999, the United States Immigration and Naturalization Service notified Guy Carlson, that two aliens were being admitted to work for Allison Creek Sheep Company for the period of October 18, 1999, through September 14, 2000.

On or about January 15, 2000, Peruvian nationals Alejandro Yauri-Rojas and Juan Araujo-Soto entered the United States pursuant to Allison Creek Sheep Company's approved H2A application and pursuant to an I-94 form that authorized their remaining in the United States until September 24, 2000.

In or about March of 2000, Mick Carlson, Gail Carlson and Guy Carlson signed Peruvian national Alejandro Yauri-Rojas to a two-year contract and Juan Araujo-Soto to a three-year contract, backdated to begin in January of 2000.

Throughout the term of these Peruvian nationals' employment, Mick Carlson routinely supervised the work of the sheep herders, Gail Carlson kept track of wages they were due and completed monthly wage statements for them, and Carlson Livestock routinely wrote checks to or engaged in other financial transactions with Allison Creek Sheep Company related to the sheep operation. The sheep were grazed on private lands primarily owned by Mick Carlson and Gail Carlson and on federal lands pursuant to grazing permits in Mick Carlson's name for Carlson Livestock.

The sheep ranch and area where the Peruvian nationals worked was very remote and rugged. The sheep herders were on call 24 hours a day, seven days a week, including holidays. They were required to be in isolated areas for extended periods of time. The sheep herders did not have regular access to telephones. The sheep herders did not receive monthly pay as required by Department of Labor regulations governing the H2A program. The sheep herders were informed through monthly wage statements of both how much they had earned, at times an amount below the Department of Labor mandated adverse affect wage rate, and what deductions were being taken from their paychecks. Among the deductions were items and supplies necessary to herd the sheep, which, under Department of Labor regulations, were to be provided by the employer at no cost to the employee. At approximately the same time that the Peruvian nationals Visas and I-94s expired in September of 2002, representatives of Allison Creek Sheep Company and/or Carlson Livestock

- 4 -

obtained from the Peruvian nationals their passports, to which were attached the defendants' Visas and I-94 forms, stating the date on which the aliens' authorization to remain in the United States expired.

Alejandro Yauri-Rojas worked as a sheep herder employed by Allison Creek Sheep Company and under the terms and conditions described above until April 6, 2002, eighteen months after his I-94 expired. Juan Araujo-Soto worked as a sheep herder employed by Allison Creek Sheep Company and under the terms and conditions described above until September 22, 2002, nearly two years after his I-94 expired.

## IV.   SENTENCING FACTORS

**A.   Maximum [and Minimum] Penalties.** A violation by an organization of Title 18, United States Code, Section 1324(a)(1)(A)(iii) and (B)(i), as charged in Count One, is punishable by a term of probation of not more than five years, a maximum fine of $500,000 fine, and a special assessment of $400.

**B.   Fines and Costs**. Unless the Court determines that the defendant will not reasonably be able to pay a fine, or that paying a fine will unduly burden any of the defendant's dependents, a fine shall be imposed. There is no agreement as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

**C.   Special Assessment.** Defendant agrees to pay the special assessment before sentence is imposed, and defendant will furnish a receipt at sentencing. Payment is to be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 W. Fort Street, Fourth Floor, Boise, ID 83724.

## V.   UNITED STATES SENTENCING GUIDELINES

**A.   Application of Sentencing Guidelines.** Defendant understands that the Court must consider the Federal Sentencing Guidelines and take them into account in determining an appropriate sentence under Title 18, United States Code, Section 3553. Moreover, defendant understands that: (1) the sentence has not yet been determined by the District Judge; (2) any estimate of the likely sentence received from any source is a prediction and not a promise; and (3) the District Judge has the final authority to decide what the sentence will be.

The defendant also understands that the Court will determine the applicable sentencing factors at sentencing and that the Court's determination will affect the sentence range under the Sentencing Guidelines.   While the Court may take the defendant's cooperation and the recommendations of the parties into account in determining the sentence to be imposed, the Court has complete discretion to impose a sentence other than the sentence recommended, including the maximum sentence possible for the crimes to which defendant has pled.

**B.     Chapter Eight Applies to Sentencing of Organizations.**  Defendant understands that the Court will consider Chapter Eight of the United States Sentencing Guidelines as the advisory set of guidelines in this case.   The parties have no further agreement as to application of the principles set forth in Chapter Eight to this case.

## VI.   WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

The defendant is aware that Title 18, United States Code, Section 3742 affords defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the other terms of this Agreement, the defendant knowingly and voluntarily gives up (waives) all appeal rights defendant may have regarding both defendant's conviction and sentence, including any restitution or forfeiture order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute.

The defendant is also aware that under certain circumstances a defendant has the right to collaterally challenge defendant's sentence through a habeas petition such as a motion pursuant to Title 28, United States Code, Section 2255.  Acknowledging this, in exchange for the other terms of this Agreement, the defendant knowingly and voluntarily gives up (waives) defendant's right to contest defendant's pleas, conviction, or sentence in any post-conviction proceeding, including any proceeding authorized by Title 28, United States Code, Section 2255, except as to an appeal claiming ineffective assistance of counsel based upon facts discovered after the entry of defendant's guilty pleas.

The defendant further understands that nothing in this Plea Agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b).

- 6 -

## VII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide all material financial and other information as may be requested by a representative of the United States Probation Office for use in preparing a Presentence Report. Failure to execute releases and/or provide such material information as may be required is a violation of the terms of this Agreement, and will relieve the Government of its obligations as set forth in this Agreement, and may subject the defendant to an enhancement under Guidelines Section 3C1.1, or provide grounds for an upward departure under Section 5K2.0 of the Sentencing Guidelines, but at the option of the Government, may not constitute grounds for withdrawing the plea of guilty.

## VIII.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court is not bound to follow any recommendations or requests made by the parties at the time of sentencing. If the Court decides not to follow any of the parties recommendations or requests, the defendant cannot withdraw from this Plea Agreement or the guilty plea.

## IX.   CONSEQUENCES OF VIOLATING AGREEMENT

**A.   <u>Government's Options.</u>** If defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute defendant on other charges, including any charges dismissed as part of this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed under this Agreement that defendant's breach of the Agreement warrants further prosecution, the Government will have the choice between letting the conviction under this Plea Agreement stand or vacating such conviction so that such charges may be re-prosecuted. If the Government makes its determination before sentencing, it may withdraw from the Plea Agreement in its entirety.

**B.   <u>Defendant's Waiver of Rights.</u>** Defendant agrees that if defendant fails to keep any promise made in this Agreement, defendant gives up: (1) the right not to be placed twice in jeopardy for the offense(s) to which defendant entered a plea of guilty or which were dismissed under this Agreement; (2) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner for any charge that is brought as a result of defendant's failure to keep this

-7-

Agreement; and (3) the right to be charged within the applicable statute of limitations period for any charge that is brought as a result of defendant's failure to keep this Agreement, and on which the statute of limitations expired after defendant entered into this Agreement.

## X.    MISCELLANEOUS

A.    **No Other Terms**. This Agreement incorporates the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. If requested to do so by the defendant or defendant's counsel, the Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities.

## XI.    UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

THOMAS E. MOSS
UNITED STATES ATTORNEY
By:

_____
WENDY J. OLSON
Assistant United States Attorney

7/25/05
DATE

## XII.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon the potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, no person has, directly or indirectly, threatened or coerced me to do, or refrain from doing, anything in connection with any aspect of this case, including entering a plea of guilty. I am satisfied with my attorney's advice and representation in this case.


_____          _____
Allison Creek Sheep Company                       DATE   7/18/05
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth above.


_____          _____
SCOTT McKAY                                              DATE   7 / 14 / 05
Attorney for the Defendant


January 2005

- 9 -